**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

PRIORITY ONE SERVICES, INC.,

        Petitioner,

        v.

W&T TRAVEL SERVICES, LLC,

        Respondent.

Civil Action No. 10-1873 (BAH)
Judge Beryl A. Howell

## MEMORANDUM OPINION

       Pending before the Court is Priority One Services, Inc.'s (hereinafter "Priority One")

petition to confirm an arbitration award, and respondent W&T Travel Services, LLC's

(hereinafter "W&T") motion to vacate, modify, and correct this award. Priority One alleges that

W&T materially breached and improperly terminated a contract between the parties. As agreed

to under the terms of the contract, the parties' dispute was presented to the American Arbitration

Association, and a panel of three arbitrators (hereinafter "the Panel") entered an award in favor

of Priority One. W&T now seeks to vacate, modify, and correct the Panel's decision, arguing

that the Panel exceeded its power, manifestly disregarded the law, and, in any event,

miscalculated the damages awarded to Priority One.[1] As explained below, the Court denies in

part and grants in part the respondent's motion, correcting only the period of prejudgment

interest awarded to Priority One. In all other respects, the petitioner's request to confirm the

Panel's award is granted.[2]

---

[1] W&T also requests a hearing on its motion. Resp't Mot. Vacate, at 3. This request is denied.

[2] Under the Federal Arbitration Act (hereinafter "FAA"), within one year after an arbitration award "any party to the arbitration may apply to the court so specified for an order confirming the award." 9 U.S.C. § 9. This provision does

1

# I.   BACKGROUND

Respondent W&T is a Maryland limited liability company that maintains its principal place of business in Maryland.  Pet'r Mem. Supp.  Pet. Confirm Arbitration Award (hereinafter "Pet'r Mem. Confirm"), ECF No. 1, at 2.  On August 20, 2008, the National Institutes of Health (hereinafter "NIH") awarded W&T a contract (hereinafter "the Prime Contract") to operate shuttle buses for NIH employees and patients between the NIH campus in Bethesda, Maryland and other NIH locations, including those in Washington, D.C. and Virginia. [3]  Statement P. & A. Supp. Resp't Mot. Vacate, Modify & Correct Arbitration Award (hereinafter "Resp't Mot. Vacate"), ECF No. 6, at 6-7.  The Prime Contract provided for one base year of services, and was renewable by NIH for four additional one-year terms.  *Id.* at 7.  Including all option years, this contract was valued at approximately $34 million.  *Id.*

At about the same time that NIH awarded W&T the Prime Contract, W&T entered into an agreement (hereinafter "the Subcontract"), on August 27, 2008, with Priority One, a Virginia corporation with its principal place of business in Virginia, under which Priority One would be responsible for managing the NIH patient shuttle bus services.  *Id.* at 9; Pet'r Mem. Confirm, at 2.  W&T retained responsibility under the Prime Contract for managing the NIH employee shuttle buses.  Resp't Mot. Vacate, at 7.

---

not "itself bestow[] jurisdiction on the federal district courts."  *Karsner v. Lothian*, 532 F.3d 876, 882 (D.C. Cir. 2008) (quoting *Kasap v. Folger Nolan Fleming & Douglas, Inc.*, 166 F.3d 1243, 1245-46 (D.C. Cir. 1999)); *see also Southland Corp. v. Keating*, 465 U.S. 1, 16 n.9 (1984) (The FAA "creates federal substantive law requiring the parties to honor arbitration agreements, [but] it does not create any independent federal-question jurisdiction under 28 U.S.C. § 1331 (1976) or otherwise.").  The Court has diversity jurisdiction over this matter, pursuant to 28 U.S.C. § 1332, because the amount in controversy exceeds the requisite jurisdictional threshold and the parties have complete diversity of citizenship.  Venue is proper because the arbitration award was rendered in this district.  9 U.S.C. § 9 ("If no court is specified in the agreement of the parties, then [an application to confirm an arbitration award] may be made to the United States court in and for the district within which such award was made.").

[3] Although W&T states that it was awarded the Prime Contract on August 20, 2008, the contract itself states that the contract was award on September 1, 2008.  Resp't Mot. Vacate, at 6; *see* Resp't Mot. Vacate, ECF No. 6, Ex. A, Prime Contract.  This discrepancy is immaterial to resolution of the pending motions.

Like the Prime Contract, the Subcontract provided for one year of services, but stated that the contract was automatically renewed if NIH renewed the Prime Contract for the option years. Pet. Confirm Arbitration Award, ECF No. 1, Ex. 1, Subcontract between W&T and Priority One (hereinafter "Subcontract"), at 2. The Subcontract additionally stated that "[a]ll claims, disputes and matters in question arising out of, or relating to, this Subcontract Agreement or the breach thereof . . . shall be decided by arbitration." *Id.* § 12. The agreement contained a termination clause that, in relevant part, read:

> This Agreement may be terminated by Contractor upon a material breach by the Subcontractor to perform its obligation hereunder in accordance with the terms and conditions set forth in this Agreement. Upon giving the Subcontractor written notice of such breach, the Subcontractor will have ten (10) days to cure such breach. Termination of this Agreement shall be effective after ten (10) days, only if the breach is not cured.

*Id.* at § 9. Furthermore, in addition to its own terms, the Subcontract "incorporated by reference" the Prime Contract between W&T and NIH. *Id.* at § 11.

Under the Prime Contract, NIH had the option of requiring W&T to install NextBus (or similar) technology on employee shuttle buses. Resp't Mot. Vacate, at 7. This technology electronically tracks the buses on which it is installed and relays arrival and departure times to waiting passengers. *Id.* If NIH requested this technology, in addition to Priority One's other responsibilities under the Subcontract, Priority One was responsible for installing the NextBus technology on W&T's employee shuttle buses. *Id.*

On January 5, 2009, NIH exercised the NextBus technology option and allegedly gave W&T until September 30, 2009 to get it installed.[4] *Id.* at 9. W&T then informed Priority One that it needed to comply with the September 30, 2009 deadline to install the technology. *Id.*

---

[4] With regard to the September 30, 2009 deadline, the Panel stated that "in an internal NIH document, the NIH official claimed by [W&T] to have established that deadline denied having done so, and expressed the belief that [W&T's] CEO, Darnell Lee, had set that date." Pet. Confirm Arbitration Award, Ex. 3, Award of Arbitrators

On September 22, 2009, eight days before NIH's deadline, W&T alleges that the NextBus technology was not fully installed on all employee shuttle buses. *Id.* Pursuant to the Subcontract, on that date W&T sent Priority One a notice to cure. *Id.* Ten days later, after the NIH deadline had passed, W&T states that the NextBus Technology was still not completely installed in the employee shuttle buses. *Id.* W&T considered this a material breach of the Subcontract, and, on October 6, 2009, sent Priority One a letter notifying it that W&T was terminating the agreement as of November 30, 2009.[5] *Id.* at 9-10. W&T directed Priority One to stop immediately work on the NextBus Technology, and gave Priority One "until November 30, 2009 to phase out the rest of its activities" under the Subcontract. *Id.*; *see also* Resp't Mot. Vacate, Ex. D, Notice of Termination of Subcontract. According to W&T, Priority One was paid for all work up to the contract termination date of November 30, 2009. Resp't Mot. Vacate, at 10.

On December 15, 2009, Priority One filed a demand for arbitration with the American Arbitration Association (hereinafter "AAA"), arguing that W&T's termination of the Subcontract was improper and a material breach of the contract terms. Pet'r Opp'n Mot. Vacate, ECF No. 7, at 2. As compensation for breach of contract, Priority One sought "damages for the nine months remaining in option year one and the additional three option years." *Id.*

---

(hereinafter "Award of Arbitrators"), ¶ 7.

[5] The Panel found that, by the purported NIH deadline of September 30, 2009, NextBus was working properly on 13 of 14 operating employee shuttle buses and "only minor problems needed to be worked out for full operation of the technology, and that these minor problems did not constitute a material breach of the contract." Award of Arbitrators, ¶ 8.

From August 10 to August 12, 2010, the parties presented their claims to a panel of three

arbitrators in Washington, D.C. *Id.* at 2-3.[6] In lieu of a final oral argument, the parties agreed to

submit written post-trial briefs. *Id.* at 3; Resp't Mot. Vacate, at 10. The Panel requested that the

parties focus their briefs on, *inter alia*, the applicability of Maryland law and the issue of

damages.[7] Resp't Mot. Vacate, at 10.

After receiving the parties' post-hearing briefs, on October 18, 2010, the Panel

unanimously entered an award in favor of Priority One, determining that Priority One did not

materially breach the subcontract because "NIH did not view the [September 30, 2009] deadline

as significant," the NextBus technology was operating properly on 13 of 14 employee shuttle

---

[6] The three arbitrators on the Panel were selected from candidates, who were reviewed and ranked in order of preference by the parties. The Panel was composed of three law firm partners, each of whom had over 25 years of experience in contract and commercial law, and significant experience in arbitrating commercial disputes. Pet'r Opp'n Mot. Vacate, ECF No. 7, at 2-3; *see also* Pet'r Opp'n Mot. Vacate, ECF No. 7, Ex. 6, Letter from D. Brazier to M. Klisch and R. Thomas dated Feb. 23, 2010 Regarding Appointment of Arbitrators; Ex. 7, Arbitrators' Qualifications. W&T's complaint that the Panel did not indicate experience "in *government* contracts law and, most specifically, federal procurement regulatory law," Resp't Reply, ECF No. 8, at 8-9 (emphasis in original), does not mean they lacked such experience and, in any event, amounts to the proverbial "crying over spilt milk," considering that the respondent "assured the AAA at the time the Panel was seated that W&T Travel would not challenge the qualifications of any of the arbitrators at any subsequent time." *Id.* at 8.

[7] W&T intimates that the Panel favored Priority One by allowing it to provide a "specially-allowed" post-hearing brief to counter W&T's arguments. Resp't Mot. Vacate, at 13. Specifically, W&T claims that "[r]ather than deciding the case on the written post trial briefs, the Arbitration Panel gave claimant yet another two weeks to respond to Respondent's argument," *id.* at 11, because "the Panel was unable to rebut [W&T's] argument and wanted to lift whatever words [Priority One] presented into its own decision." *Id.* at 21. This contention is unsupported and meritless. The Panel invited the parties to submit post-hearing briefs on a specific set of issues. *Id.* at 10. W&T used the opportunity to raise new defenses. *Id.* at 10-11. Accordingly, the Panel appropriately allowed Priority One to submit a supplemental response. *Id.* at 13. In Priority One's supplemental response, it requested the Panel to impose sanctions on W&T for raising new defenses after the Panel's hearing and after full briefing on the dispute. *Id.* The Panel then invited W&T to reply to the request for sanctions, but W&T's reply, according to the Panel, included more than the "single issue it was invited to brief" and "reargue[d] subjects addressed in the parties' prior briefing." *Id.* at 15. The Panel therefore informed W&T that it would "review only the portion of the Respondent's . . . brief that addresses the fee/sanctions request of [Priority One]" and that "additional portions of the brief [would] not be considered." *Id.* W&T now states that the "Panel exceeded its power in consciously choosing not to consider Respondent's rebuttal arguments." Resp't Reply, at 10. W&T does not assert that there was "evident partiality" or corruption on part of the Panel, *see* 9 U.S.C. § 10(a)(2) (allowing the court to vacate or modify an arbitration award where the arbitration Panel displayed evident partiality or corruption), but instead "invites the court to make whatever inferences it chooses to make based on the facts." Resp't Mot. Vacate, at 29; Resp't Reply, at 17 ("[W&T] never in its Motion accused or suggested that the Panel was 'corrupt.'"). Based on the facts and current record, the Court finds no basis to question the Panel's management of the arbitration process, which appears to have afforded the parties ample opportunity to present their legal and factual positions.

buses on the deadline date, and W&T's "unreasonable conduct" prevented Priority One from completing installation and correcting any malfunctions. Pet. Confirm Arbitration Award, Ex. 3, Award of Arbitrators (hereinafter "Award of Arbitrators"), ¶¶ 7-8, 11-12. The Panel awarded Priority One lost profit in the amount of $546,839 for the last nine months of the first option year, plus 6% per annum prejudgment interest beginning October 7, 2009. *Id.* at 7. The Panel further awarded Priority One lost profit in the amount of $588,181, plus 6% per annum interest beginning thirty days after the date of the Panel's decision, for the entire second option year after concluding that, because NIH had renewed the Prime Contract for the second option year on September 1, 2010 before the alleged breach, Priority One was entitled to the profits that it would have realized for year two as well. *Id.* ¶ 21. The Panel did not award Priority One lost profits for the third and fourth option years. *Id.* ¶ 28.

On November 3, 2010, pursuant to 9 U.S.C. § 9,[8] Priority One filed a petition in this Court to confirm the Panel's arbitration award. Pet. Confirm Arbitration Award, ECF No. 1. Two days later, W&T filed a notice that it would contest the petition. Resp't Notice Vacate, Modify & Correct Arbitration Award, ECF No. 4. On January 18, 2011, W&T moved to vacate, modify, and correct the arbitration Panel's award, arguing that the Panel exceeded its power, manifestly disregarded the law, and, in any event, made a material miscalculation when calculating the damages award. Resp't Mot. Vacate, at 1-2; *see* 9 U.S.C. § 10(a)(4) (authorizing the Court to vacate an arbitration award "where the arbitrators exceeded their powers, or so imperfectly executed them that a mutual, final, and definite award upon the subject matter

---

[8] In relevant part, 9 U.S.C. § 9 states: "If the parties in their agreement have agreed that a judgment of the court shall be entered upon the award made pursuant to the arbitration, and shall specify the court, then at any time within one year after the award is made any party to the arbitration may apply to the court so specified for an order confirming the award, and thereupon the court must grant such an order unless the award is vacated, modified, or corrected as prescribed in sections 10 and 11 of this title. If no court is specified in the agreement of the parties, then such application may be made to the United States court in and for the district within which such award was made."

submitted was not made."); 9 U.S.C. § 11(a) (authorizing the Court to modify or correct an arbitration award "[w]here there was an evident material miscalculation of figures or an evident material mistake in the description of any person, thing, or property referred to in the award.").

Both Priority One's petition to confirm the arbitration award and W&T's motion to vacate, modify, and correct the award are pending before the Court.[9] For the following reasons, W&T's motion to vacate, modify, and correct the Panel's award is granted in part and denied in part. The Court concludes that there is no basis to vacate the award, but concludes that the Panel miscalculated the prejudgment interest. In all other respects, Priority One's petition to confirm the award is granted.

## II. STANDARD OF REVIEW FOR MODIFYING, VACATING OR CORRECTING AN ARBITRATION AWARD

"Judicial review of arbitral awards is extremely limited," *Kurke v. Oscar Gruss & Son, Inc.*, 454 F.3d 350, 354, (D.C. Cir. 2006) (quoting *Teamsters Local Union No. 61 v. United Parcel Serv., Inc.*, 272 F.3d 600, 604 (D.C. Cir. 2001)), and the court "must confirm an arbitration award where some colorable support for the award can be gleaned from the record." *LaPrade v. Kidder, Peabody & Co., Inc.*, 94 F. Supp. 2d 2, 4 (D.D.C. 2000). A proceeding to confirm an arbitration award is "intended to be summary." *Adkins v. Teseo,* 180 F. Supp. 2d 15,

---

[9] In its Reply brief, W&T claims that its Motion to Vacate, Modify and Correct the Arbitration Award was "conceded due to the fact that [Priority One's] Opposition was filed more than 14 days after the date of service of [W&T's] motion in violation of [Local] Rule 7(b)." Resp't Reply, at 1. Local Rule 7(b) states "[w]ithin 14 days of the date of service or at such other time as the Court may direct, an opposing party shall serve and file a memorandum of points and authorities in opposition to the motion. If such a memorandum is not filed within the prescribed time, the Court may treat the motion as conceded." LCvR 7(b). However, Federal Rule of Civil Procedure 6(d) adds three days in addition to the 14-day period listed in LCvR 7(b) if service is made electronically, as it was here. *See also Whitney v. United States*, 251 F.R.D. 1, 2 n.3 (D.D.C. 2008). Priority One filed its Opposition 17 days after W&T's motion was served electronically, and was thus clearly timely filed. Faced with W&T's argument that its opposition was untimely filed, Priority One sought leave to file a sur-reply to clarify the timeliness of its opposition filing and to request costs, including reasonable attorney's fees, associated with the sur-reply. Pet'r Mot. Leave File Sur-Reply Br., ECF No. 9. Priority One's motion for leave to file a sur-reply was granted by this Court. Minute Order dated Aug. 18, 2011 (Howell, J.). Priority One's request for an award of the costs associated with the filing of its motion seeking leave to file a sur-reply and the sur-reply itself is GRANTED.

18 (D.D.C. 2001) (quoting *Taylor v. Nelson,* 788 F.2d 220, 225 (4th Cir. 1986)). The party

challenging the award faces a "high hurdle." *Stolt-Nielsen S.A. v. AnimalFeeds Int'l Corp.*, 130

S. Ct. 1758, 1767 (2010). Courts "do not sit to hear claims of factual or legal error by an

arbitrator" as they would "in reviewing decisions of lower courts." *Kurke,* 454 F.3d at 354

(internal citations and quotations omitted).

Pursuant to the Federal Arbitration Act (hereinafter "FAA"), the court must confirm an

arbitration award unless there are statutory grounds to vacate, modify, or correct the arbitrators'

decision. 9 U.S.C. § 9 (the court must grant an order to confirm an arbitration award "unless the

award is vacated, modified, or corrected as prescribed in sections 10 and 11 of this title"). "[T]he

grounds for vacating an arbitration award are limited to 'extreme arbitral conduct' as defined in

Sections 10 and 11 of the FAA." *Contech Constr. Prods., Inc. v. Heierli*, 764 F. Supp. 2d 96, 108

(D.D.C. 2011) (quoting *Hall St. Assocs. v. Mattel, Inc.*, 552 U.S. 576, 586 (2008)). The party

objecting to the award bears the burden of demonstrating that one of the statutory grounds set

forth in the FAA exists. *Affinity Fin. Corp. v. AARP Fin., Inc.*, No. 10-cv-2055, 2011 WL

2582876, at *2 (D.D.C. July 1, 2011) (citing *Al-Harbi v. Citibank, N.A.,* 85 F.3d 680, 682 (D.C.

Cir. 1996)).

Section 10 of the FAA lists four grounds upon which an arbitration may be vacated: "(1)

where the award was procured by corruption, fraud, or undue means; (2) where there was evident

partiality or corruption in the arbitrators, or either of them; (3) where the arbitrators were guilty

of misconduct in refusing to postpone the hearing, upon sufficient cause shown, or in refusing to

hear evidence pertinent and material to the controversy; or of any other misbehavior by which

the rights of any party have been prejudiced; or (4) where the arbitrators exceeded their powers,

or so imperfectly executed them that a mutual, final, and definite award upon the subject matter

submitted was not made." 9 U.S.C. § 10(a).  Additionally, Section 11 of the FAA provides that a district court may, upon application by any party, modify or correct an arbitration award where there is "an evident material miscalculation of figures or an evident material mistake in the description of any person, thing, or property referred to in the award."  9 U.S.C. § 11(a).[10]

In addition to the statutory grounds to vacate or modify arbitration awards set forth in Sections 10 and 11 of the FAA, courts previously have also vacated an arbitrator's decision upon finding that the decision was made "in manifest disregard of the law."  *Kurke*, 454 F.3d at 354 ("In addition to the statutory grounds, 'arbitration awards can be vacated . . . if they are in manifest disregard of the law,'" quoting *LaPrade v. Kidder, Peabody & Co., Inc.*, 246 F.3d 702, 706 (D.C. Cir. 2001)).  Whether an arbitrator's manifest disregard for law remains a valid basis for vacating an arbitration decision is unclear after the Supreme Court's decision in *Hall St. Associates v. Mattel, Inc.*, 552 U.S. 576 (2008), which stated that "[9 U.S.C.] §§ 10 and 11 . . . provide the FAA's exclusive grounds for expedited vacatur and modification."  *Id.* at 584. Since *Hall St. Associates*, neither the Supreme Court nor the D.C. Circuit has determined whether a manifest disregard for law may still provide a basis for vacating an arbitration decision.  *Stolt-Nielsen*, 130 S. Ct. at 1768 n.3 ("We do not decide whether 'manifest disregard' survives our decision in *Hall Street Associates* . . ."); *see generally Regnery Publ'g, Inc. v. Miniter*, 368 F. App'x 148, 149 (D.C. Cir. 2010) (per curiam) (affirming district court decision by "[a]ssuming without deciding that the 'manifest disregard of the law' standard survives *Hall Street Associates*. . . .").  The Court need not resolve this issue of whether a manifest disregard for the law continues to provide an independent basis for vacating arbitration awards because,

---

[10] Section 11 also authorizes the Court to modify an arbitration award "where the arbitrators have awarded upon a matter not submitted to them, unless it is a matter not affecting the merits of the decision upon the matter submitted" or "where the award is imperfect in matter of form not affecting the merits of the controversy." 9 U.S.C. § 11(b)-(c).

even assuming *arguendo* that this standard exists, the Court finds no basis to vacate the Panel's judgment.

## III.    DISCUSSION

W&T urges the Court to vacate, modify, or correct the arbitration award pursuant to 9 U.S.C. § 10(a) because the Panel allegedly exceeded and imperfectly executed its powers when it (1) "chose not to apply federal law to the dispute even though it was clearly required to do so by the plain language of the Subcontract," and (2) "award[ed] more damages for lost profits than the law allows."  Resp't Mot. Vacate, at 1-2.  In the alternative, W&T argues that the Court should modify and correct the arbitration award pursuant to 9 U.S.C. § 11 because the Panel miscalculated interest damages.  There is no basis to vacate the Panel's decision, but the Court agrees that the Panel miscalculated interest damages.  Accordingly, that provision of the Panel's judgment is corrected.

### A.  The Panel Did Not Exceed Its Powers Or Manifestly Disregard The Law

Section 10(a)(4) of the FAA authorizes the Court to vacate an arbitration award "where the arbitrators exceeded their powers, or so imperfectly executed them that a mutual, final, and definite award upon the subject matter submitted was not made."  9 U.S.C. § 10(a)(4).  To succeed in vacating an award under § 10(a)(4), a party must demonstrate that the "arbitrator strayed from interpretation and application of the agreement and effectively 'dispense[d] his own brand of industrial justice.'"  *Stolt-Nielsen*, 130 S. Ct. at 1767 (quoting *Major League Baseball Players Ass'n v. Garvey*, 532 U.S. 504, 509 (2001).  "[I]t is particularly necessary to accord the 'narrowest of readings' to the excess-of-authority provision of section 10(d).  That provision does not, it must be stressed, confer on courts a general equitable power to substitute a judicial resolution of a dispute for an arbitral one."  *Kanuth v. Prescott, Ball & Turben, Inc.*, 949 F.2d

1175, 1180 (D.C. Cir. 1991). If an arbitrator "was 'arguably construing or applying the contract,' a court must defer to the arbitrator's judgment." *Madison Hotel v. Hotel & Restaurant Emps., Local 25 AFL-CIO*, 144 F.3d 855, 859 (D.C. Cir. 1998) (quoting *United Paperworkers Int'l Union v. Misco, Inc.*, 484 U.S. 29, 38 (1987)). This deference applies, even if the Court is convinced that the arbitrator "committed serious error." *See Garvey*, 532 U.S. at 509. Additionally, arbitrators are not required to explain the basis for their award when the grounds can be gleaned from the record. *Lessin v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 481 F.3d 813, 820 (D.C. Cir. 2007) (citing *Sargent v. Paine Webber Jackson & Curtis, Inc.*, 882 F.2d 529, 532 (D.C. Cir. 1989)).

To the extent that W&T argues that the Panel manifestly disregarded the law, the Court's review under this standard is "extremely narrow." *Kurke*, 454 F.3d at 354. To vacate an award for manifest disregard of the law, the court "must find that (1) the arbitrators knew of a governing legal principle yet refused to apply it or ignored it altogether, and (2) the law ignored by the arbitrators was well defined, explicit, and clearly applicable to the case." *Id.* (quoting *LaPrade*, 246 F.3d at 706). If an "explanation for an award is deficient . . . [a court] will confirm it if a justifiable ground for the decision can be inferred from the facts of the case." *Id.* (quoting *Duferco Int'l Steel Trading v. T. Klaveness Shipping A/S*, 333 F.3d 383, 390 (2d Cir. 2003)). Even "[w]hen the arbitrators give no explanation for their decision, as commonly occurs in arbitration . . . [a court] must confirm the award if any justification can be gleaned from the record." *Id.* (internal and citations quotations omitted). "In order to obtain a vacatur of an arbitration award on 'manifest disregard' grounds, a party must make a specific showing that an arbitrator knowingly disregarded the applicable law." *Williams Fund Private Equity Grp., Inc. v. Engel*, 519 F. Supp. 2d 100, 103 (D.D.C. 2007) (citing *Alston v. UBS Fin. Servs., Inc.*, No. 04-

cv-01798, 2006 WL 20516, at *3 (D.D.C. Jan. 2, 2006) ("[Petitioners] fail to allege that the arbitrators undertook to correctly state the law and then proceeded to disregard their own pronouncement.")).

### 1. The Panel Did Not Exceed Its Power Or Manifestly Disregard The Law When It Applied Maryland Law To The Dispute

W&T argues that the Panel exceeded its power when it "consciously refused to apply" Federal Procurement Law despite W&T "convincingly [making] the Panel aware that [Federal law] applied to [the] matter." Resp't Mot. Vacate, at 25. According to W&T, the Panel "knew of the relevant legal principle, appreciated that this principle controlled the outcome of the disputed issue, and nonetheless willfully flouted the governing law by refusing to apply it." *Id.* at 26 (quoting *Stolt-Nielsen*, 130 S. Ct. at 1768 n.3). Consequently, W&T declares that the Panel's decision to apply Maryland law was "a direct move on the part of the Panel to employ its own version of justice." *Id.* at 25. The Court, however, finds this assertion erroneous, and further concludes that the Panel did not exceed its powers nor did it manifestly disregard the law when it chose to apply Maryland law to resolve the parties' dispute.

The Subcontract provides that:

> "[t]he Subcontractor agrees that where a [Federal Acquisition Regulation] provision or clause . . . is incorporated in, or applicable to the Subcontract or work being performed under it, Federal law shall govern the interpretation and application thereof. Where no Federal law is applicable, this Agreement shall be governed by the appropriate law of the State of Maryland."

Subcontract, § 21.1.

W&T argues that Federal law is applicable to this dispute because the Prime Contract was incorporated by reference into the Subcontract, and the Prime Contract "incorporates by reference FAR 52-212-4 which permits the government, and thus, [W&T] as the Prime

Contractor, to terminate [Priority One] for convenience as well as terminate the Subcontract for default." Resp't Mot. Vacate, at 14. Thus, pursuant to the allegedly incorporated FAR provision, W&T argues that the Panel "had no basis whatsoever not to apply federal procurement regulatory law" and that under federal law its termination of the Subcontract was proper. *Id.* at 26. Two consequences would apparently flow if W&T's contract construction had been adopted by the Panel: first, W&T would have broader grounds for termination of the Subcontract with Priority One, even absent a material breach by Priority One; and, second, under federal procurement regulatory law, "in contrast with damages stemming from breach of contract, the sum due a contractor after a termination for convenience is significantly circumscribed . . . [and Priority One] would not be due anticipatory profits and consequential damages pursuant to its Subcontract with [W&T]." *Id.* at 20.

Despite W&T's assertions, the Panel did not exceed its power when it declined to apply federal law both to the determination of the legality of W&T's termination of the Subcontract and to the calculation of damages. In its decision, the Panel stated that "despite the actual termination having been for material breach," W&T argued for the first time in a post-hearing brief that its termination action should be regarded as a 'termination for convenience' or a 'termination for default' and that "both these termination clauses in the [] Prime Contract with NIH were incorporated by reference into the Subcontract." Award of Arbitrators, ¶ 13. The Panel found this argument to be "seriously flawed" because the Subcontract "expressly limits the Respondent's right to terminate under the termination for convenience clause to a situation in which NIH has first terminated the prime contract either for default or inconvenience" and it was "undisputed that no such termination occurred by NIH." *Id.* ¶ 14. Moreover, the Panel concluded that incorporation by reference of the FAR provision, which allows the government to

terminate its contract with W&T for convenience or for default, did not "confer[] on the Respondent exactly the same rights with respect to the Claimant as NIH had with [W&T]." *Id.* ¶ 15.

In making this decision, the Panel did not "choose to institute its own brand of justice." The Panel interpreted the contract, concluded that federal law did not directly govern the dispute, and, thus, in accordance with the Subcontract, applied Maryland Law. *Id.* ¶¶ 15-16; *see also* Subcontract § 21.1 ("Where no Federal law is applicable, this Agreement shall be governed by the appropriate law of the State of Maryland."). The Panel was "arguably construing or applying the contract" when it applied Maryland law and therefore did not "exceed its power" when making that decision. *See United Paperworkers Int'l Union*, 484 U.S. at 38 ("[A]s long as the arbitrator is even arguably construing or applying the contract and acting within the scope of his authority, that a court is convinced he committed serious error does not suffice to overturn his decision.").

To the extent that W&T argues that the Panel's decision to apply Maryland law represented a manifest disregard for the law, the Court disagrees. W&T's claim that the Panel knew the relevant legal principle, appreciated this principle controlled and nonetheless refused to apply it, is erroneous. Although W&T cited cases that arguably supported incorporating the termination by convenience and default clauses in FAR 52-212-4 into the Subcontract, Priority One presented the Panel with cases to support the opposite conclusion. *See Hartford Accident & Indem. Co. v. Scarlett Harbor Assoc., Ltd. P'ship,* 674 A.2d 106, 142-43 (Md. Ct. Spec. App. 1996) ("When an earlier document is 'incorporated by reference' into a subsequent contract, it simply means that the earlier document is made a part of the second document, as if the earlier document were fully set forth therein. Absent an indication of a contrary intention, the

14

incorporation of one contract into another contract involving different parties does not automatically transform the incorporated document into an agreement between the parties to the second contract.") (internal citations omitted); *United States for Use of Yonker Constr. Co. v. Western Contracting Corp.,* 935 F.2d 936, 939 (8th Cir. 1991) (stating that the court was "not convinced" that a subcontract incorporated provisions of the general contract when the general contract's provisions applied to the government). The Panel chose the position contrary to the one advocated by W&T. That decision, however, was not in manifest disregard to the applicable law. *See Kurke,* 454 F.3d at 354 (Courts "do not sit to hear claims of factual or legal error by an arbitrator" as they would "in reviewing decisions of lower courts.").

### 2. The Panel Did Not Exceed Its Powers Or Manifestly Disregard The Law When Calculating Damages

W&T also claims that the Panel exceeded its powers in its award of damages, claiming that the Panel (1) did not adequately explain its method for calculating damages and chose "a damage figure for lost profits totally unsupported by the relevant caselaw or any kind of law;" (2) improperly awarded Priority One speculative lost profits for option year 2; and (3) improperly imposed punitive damages by awarding prejudgment interest. The Court finds no basis for these arguments.

#### a. The Panel Did Not Exceed Its Powers In Calculating Lost Profits

W&T states that the Panel exceeded its powers when calculating the damage award because there was "no basis for its irrational calculation of lost profits damages." Resp't Mot. Vacate, at 27. The fact that the Panel did not provide a full explanation for its damages calculation, according to W&T, supports the conclusion that the Panel exceeded its power or manifestly disregarded the law. *See id.* at 27-28.

15

According to W&T, the Prime Contract is a Fixed-Price Incentive contract with a firm profit margin of 4.5% "built into the ceiling price of the contract." *Id.* at 22. W&T states that with the "assistance and full knowledge of [Priority One], [W&T] drafted and submitted its cost/price proposal to NIH with a profit margin of 4.5% for the entire contract." *Id.* Thus, "there is no need for speculation or estimation as to [Priority One's] lost profits. Such number would be equivalent of 4.5% of the amount [Priority One] would have been paid for the remaining nine months of Option Year One . . . roughly $85,000 [and for] Option Year 2 . . . about $113,328." *Id.*

When calculating damages, the Panel did not apply a fixed 4.5% profit margin, but instead accepted Priority One's damage analysis, awarding Priority One $546,839 for the remaining nine months of option year one, and $588,181 for option year 2. Award of Arbitrators, at 7. W&T claims that Priority One "used the wrong methodology for calculating profit in assessing its damages" and that the Panel should have used the built-in profit margin on the contract. Resp't Mot. Vacate, at 12, 22.

As a preliminary matter, W&T relies on *Tinaway v. Merrill Lynch & Co., Inc.,* 658 F. Supp. 576 (S.D.N.Y. 1987), and *Halligan v. Piper Jaffray, Inc.,* 148 F.3d 197 (2d Cir. 1998), to argue that the Panel's failure to more fully explain its calculation method demonstrates that the Panel exceeded its power or manifestly disregarded the law. *See* Resp't Mot. Vacate, at 21, 29-30 ("There is no reasoned discussion in the Panel's decision of the method used to calculate the lost profits awarded."). W&T's reading of those cases is incorrect.

In *Tinaway,* the court stated that "arbitrators were under no obligation to give reasons for their decision, and the courts are instructed that where a ground for the arbitrator's decision can be inferred from the facts of the case, the award should be confirmed." 658 F. Supp. at 579

(internal citations omitted).  The reason the Court vacated the arbitration decision in that case was because the court was unable to infer the basis for the arbitration decision from the record and, as the court stated, the "reduction of the amount of the award by ninety-five percent can only represent 'evident partiality.'"  *Id.*  Absent such glaring deficiencies, *Tinaway* confirmed that when arbitrators' rationale can be gleaned from the record, a detailed explanation is not needed or required.  *Id.; see also Lessin v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 481 F.3d 813, 820 (D.C. Cir. 2007) (citing *Sargent v. Paine Webber Jackson & Curtis, Inc.*, 882 F.2d 529, 532 (D.C. Cir. 1989)).

Here, the arbitrators' method for calculating lost profits is clearly discernable from the record before the Court.  In its briefs to the Panel, Priority One argued that its lost profits should be calculated by subtracting its cost of performing the contract from the total contract price. These figures amounted to "$586,839 in lost profits for the unperformed portion of option year one" and "$748,181 in lost profits for option year two."  Pet'r Opp'n Mot. Vacate, ECF No. 7, Ex. 10, Claimant's Pre-Hearing Brief, at 10.[11]  The Panel awarded Priority One "the exact amount of damages that Priority One testified it suffered for that option year,"[12] and $588,181 for year two, which Priority One states "is significantly less than the $748,181 Priority One testified it would lose for that option year [but was awarded] perhaps because the Panel discounted these future damages to present value."  Pet'r Opp'n Mot. Vacate, at 11. Although the Panel did not memorialize its exact calculation method, it appears clear from the record that the Panel awarded lost profits by subtracting Priority One's costs of performing the contract from the

---

[11] Priority One also stated that it incurred lost profits of $731,889 for option year three and $751,906 for option year four. Pet'r Opp'n Mot. Vacate, ECF No. 7, Ex. 10, Claimant's Pre-Hearing Brief, at 10.

[12] Priority One states that the Panel awarded it "the exact figure" it requested for lost profits in damage year one. Priority One's pre-hearing brief to the Panel stated that lost profits for year one amounted to $586,839.  The Panel, however, awarded $546,839.  It is unclear whether Priority One's pre-hearing brief contained a typographical error, or if Priority One argued for a reduced amount later in the arbitration proceedings.

base contract price. *See Kanuth*, 949 F.2d at 1179 (affirming arbitration award even though, "[i]n typical fashion, the panel did not explain how it derived the particular numbers associated with each element of the total damage award" and stating that "[o]f course, the panel is not required to give an explanation . . . ").

W&T also relies on *Halligan* for the contention that the Panel's failure to fully explain its method for calculating damages should be seen as indicative of the Panel's wrongdoing. In *Halligan,* however, the court was already inclined to find that the arbitrators manifestly disregarded the law based on other facts in the case, and explicitly stated that it "want[ed] to make clear that [it was] not holding that arbitrators should write opinions in every case or even in most cases." 148 F.3d at 204. Rather, the court "merely observe[d] that where a reviewing court is inclined to find that arbitrators manifestly disregarded the law or the evidence and that an explanation, if given, would have strained credulity, the absence of explanation may reinforce the reviewing court's confidence that the arbitrators engaged in manifest disregard." *Id.*; *see also Kanuth*, 949 F.2d at 1179 ("[C]ourts will not generally inquire into the basis of a lump-sum award unless they believe that the arbitrators rendered it in 'manifest disregard' of the law or unless the facts of the case fail to support it.") (internal quotations and citations omitted).

In the present situation, the Court is not inclined to find that the arbitrators manifestly disregarded the law. The Panel stated that it applied Maryland law, which allows lost profits that can be proved by "reasonable certainty." Award of Arbitrators, ¶ 20 (quoting *Sloan, Inc. v. Stanley G. House & Assocs., Inc.*, 311 Md. 36, 42 (1987)); *see also Hoang v. Hewitt Ave. Assoc., LLC,* 936 A.2d 915, 934 (Md. 2007) ("In a breach of contract action, upon proof of liability, the non-breaching party may recover damages for 1) the losses proximately caused by the breach, 2) that were reasonably foreseeable, and 3) that have been proven with reasonable certainty.").

18

Although W&T states that "there was no need for speculation or estimation as to [Priority One's] lost profits," the Panel chose not to accept the 4.5% profit margin as the proper estimation. The Panel instead subtracted Priority One's projected costs, which it deemed "easily capable of calculation," from the amount that Priority One would have received from the contract. Award of Arbitrators, ¶ 21.

Moreover, there is no basis for the argument that the Panel exceeded its powers when calculating lost profits. As Priority One notes, the "[b]road arbitration clause . . . empowered the Panel to resolve 'all claims, disputes and matters in question arising out of, relating to, this Subcontract.'" Pet'r Opp'n Mot. Vacate, at 12 (quoting Subcontract, § 12). The Panel was given the responsibility of determining whether W&T breached the Subcontract, and the damage Priority One suffered as a result of the alleged breach. Although W&T does not agree with the result, the Panel fulfilled the responsibility with which it was tasked when it calculated the damages it believed Priority One suffered. *See Kanuth*, 949 F.2d at 1180-81 (holding that an arbitration panel did not exceed its powers when "[t]he parties explicitly requested the panel to award monetary damages to the injured party, and that is precisely what it did.").

   *b.*  *The Panel Did Not Exceed Its Powers When It Awarded Lost Profits for Option Year 2*

W&T claims that the Panel exceeded its power and manifestly disregarded the law by awarding Priority One lost profits for option year 2, "an option year which was awarded when [Priority One] was not even a subcontractor to W&T." Resp't Mot. Vacate, at 28. W&T contends that damages for option year 2 are speculative "because there is no guarantee that an option year will be exercised" and that the contract with NIH "may not have been renewed because [Priority One] was in fact the subcontractor." Resp't Reply, at 15-16. According to

W&T, the Panel "accurately states the controlling case(s) . . . but then goes beyond the dictates of the cases with no explanation whatsoever." Resp't Mot. Vacate, at 28-29.

In its decision, the Panel stated that "[w]here, as here, a contract is renewable solely at the discretion of the government, the government is under no obligation to exercise the option." Award of Arbitrators, ¶ 25 (citing *Gov. Sys. Advisors, Inc. v. United States*, 847 F.2d 811, 813 (Fed. Cir. 1988). The Panel, however, found that "at time of the breach of the subcontract, the unrebutted evidence was that NIH had already orally indicated that the prime contract would be renewed and in fact, the prime contract was renewed for option year 2." *Id.* ¶ 21. Given these facts, the Panel concluded that Priority One's would have realized lost profits for year two but for W&T's breach of the Subcontract.

Although W&T argues that the Panel did not explain its decision, the Panel's reasoning is clear. Based on the evidence before it, the Panel found that if W&T did not terminate the Subcontract, Priority One would likely still be the subcontractor in option year 2, which the government had exercised prior to the alleged breach. The Panel determined that Priority One's lost profits for year 2 was not speculative and could be calculated with reasonable certainty. The Panel did not exceed its power or manifestly disregarded law in making this decision.

> c. *The Panel Did Not Exceed Its Powers or Manifestly Disregard the Law When It Awarded Prejudgment Interest*

W&T claims that the Panel had no authority to award prejudgment interest because it "is a form of punitive damages" and "private punishment is against public policy." Resp't Mot. Vacate, at 30. The Panel applied Maryland law, which allows prejudgment interest. *See Pulte Home Corp. v. Parex, Inc.*, 923 A.2d 971, 1022 (Md. Ct. Spec. App. 2007) ("Whether a party is

entitled to prejudgment interest . . . is left to the discretion of the fact finder.") (internal citations and quotations omitted).  W&T's contention on this issue is meritless.

**B.  The Panel Erred When Calculating Prejudgment Interest**

The Court finds no basis to vacate the Panel's ruling, but W&T is correct that the Panel erred when calculating prejudgment interest.

After concluding that W&T breached the Subcontract, the Panel awarded Priority One lost profits of $546,839 for the remaining 9 months of option year 1, plus six percent interest per annum "from October 7, 2009, until paid," and lost profits of $588,181 for option year 2, plus six percent interest per annum from "30 days after the date of this Award [November 17, 2010] until paid."  Award of Arbitrators, at 7.  W&T claims that the Panel "imposed prejudgment interest on monies that [W&T] had already paid" for option year 1, and that the "prejudgment interest required on [an] amount already paid to [Priority One] should be vacated and then corrected."  Resp't Mot. Vacate, at 30.  The Court agrees.

The Court may modify or correct an arbitral award if the movant can demonstrate that "there was an evident material miscalculation of figures."  9 U.S.C. § 11(a).   "When an arbitration award orders a party to pay damages that have already been paid or which are included elsewhere in the award, a court may modify the award."  *Eljer Mfg. v. Kowin Dev. Corp.*, 14 F.3d 1250, 1254 (7th Cir. 1994); *accord Consol. Biscuit Co. v. Karpen*, No. 3:00-cv-7703, 2001 WL 1142001, at *6 (N.D. Ohio Aug. 28, 2001) ("If a panel awards damages that have already been paid, a court has authority to modify the award.").  "Double recovery constitutes a materially unjust miscalculation which may be modified under section 11 of the Federal Arbitration Act."  *Eljer Mfg.*, 14 F.3d at 1254.

On October 6, 2009, W&T provided Priority One notice that it was terminating the Subcontract, but gave Priority One until "until November 30, 2009 to phase out the rest of its activities" under the Subcontract and paid Priority One through that date. Resp't Mot. Vacate, at 9-10. The Panel, however, awarded Priority One prejudgment interest from October 7, 2009, the date notice was provided, not the date the Subcontract was terminated, and thereby included in the award almost two months for which Priority One had been fully paid.

Under Maryland law, the purpose of prejudgment interest "is to compensate the aggrieved party for the loss of the use of the principal liquidated sum found due it and the loss of income from such funds." *Pulte Home Corp.*, 923 A.2d at 1022 (citations omitted); *see also Buxton v. Buxton,* 770 A.2d 152, 165 (2001) ("Pre-judgment interest is allowable as a matter of right when the obligation to pay and the amount due had become certain, definite, and liquidated by a specific date prior to judgment so that the effect of the debtor's withholding payment was to deprive the creditor of the use of a fixed amount as of a known date."). Priority One was paid for its services through November 30, 2009, and therefore suffered no loss of income due to W&T's breach prior to that time. The Panel's award of prejudgment interest for beginning on October 7, 2009, instead of December 1, 2009, was an evident material miscalculation, which requires correction. The Court therefore modifies the Panel's award to set prejudgment interest on Priority One's lost profits for option year 1 to run beginning December 1, 2009, the effective termination date of the Subcontract.

IV.     **CONCLUSION**

For the foregoing reasons, W&T's motion to vacate, modify, and correct the arbitration award is denied in part and granted in part. The Court denies W&T's motion to vacate or modify the Panel's award, but grants W&T's request to correct the Panel's prejudgment interest

calculation.  Aside from this correction, Priority One's petition to confirm the arbitration award

is granted.  An Order consistent with this Memorandum Opinion will be entered.

**DATED: AUGUST 23, 2011**

/s/ *Beryl A. Howell*
BERYL A. HOWELL
United States District Judge